IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEE HUNT, as Personal Representative
of the Estate of SEAN BREEDEN, Deceased,

        Plaintiff,

vs.                                  No.

NORTH CAROLINA LOGISTICS, INC.,
a North Carolina corporation;
SANVIL GROUP CORP.,
a Florida corporation;
LEONARDO R. CABRERA-SALGADO,
Individually; and BENITO A. OLIVA, Individually,

        Defendants.

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

COMES NOW the Defendant, North Carolina Logistics, Inc., by and through its

attorneys of record, Butt Thornton & Baehr PC, and respectfully petitions the Court, pursuant to

28 U.S.C. §1332 and 28 U.S.C. §1441, for the removal of this action from the First Judicial

District Court, County of Santa Fe, State of New Mexico, to the United States District Court for

the District of New Mexico on the following grounds:

        1.     On November 3, 2014, Plaintiff filed this civil action against North

Carolina Logistics, Inc. in the First Judicial District Court, County of Santa Fe, State of

New Mexico arising from an accident that occurred on March 6, 2014.  Pursuant to D.N.M.

LR-CIV 81.1, copies of the Summons and Complaint are attached hereto.

2.      At the time of his death, Sean Breeden was a resident and domiciliary of Rio Rancho, Sandoval County, State of New Mexico. See Complaint at ¶1.

3.      Plaintiff, Lee Hunt, resides in Santa Fe, Santa Fe County, New Mexico. See Complaint at ¶2. According to the Complaint, Mr. Hunt is the duly appointed personal representative for Mr. Breeden's estate. See id.

4.      Defendant North Carolina Logistics is a North Carolina corporation. See Complaint at ¶3.

5.      Defendant Sanvil Group Corp. is a Florida corporation. See Complaint at ¶5.

6.      Defendant Leonardo R. Cabrera-Salgado is a resident of the State of Florida. See Complaint at ¶7.

7.      Defendant Benito A. Oliva is also a resident of the State of Florida. See Complaint at ¶8.

8.      As such, complete diversity of citizenship exists between Plaintiff and Defendants.

9.      Plaintiff's Complaint is for "Wrongful Death" and seeks punitive damages. See Complaint at ¶¶ 58, 59, 67, 71, 79, 80, 84 and 85.

10.      Although North Carolina Logistics, Inc. does not admit that Plaintiff has been damaged as the result of any acts or omissions of North Carolina Logistics, Inc., the amount in controversy exceeds $75,000.00.

11.     Plaintiff's Complaint is a civil action over which this Court has jurisdiction pursuant to 28 U.S.C. §1332 and which is removable by North Carolina Logistics, Inc. under the provisions of 28 U.S.C. §1441 in that:

> a.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; and
>
> b.     The matter in controversy is between citizens of different states.

12.     This Notice of Removal is filed with this Court within thirty (30) days after service of process upon North Carolina Logistics, Inc.

13.     North Carolina Logistics, Inc., immediately upon the filing of this Notice of Removal, gave written notice of the filing as required by 28 U.S.C. §1446(D) and filed a copy thereof with the Clerk of the First Judicial District Court, County of Santa Fe, State of New Mexico, the Court from which this action is removed.

14.     This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11.


WHEREFORE, the Defendant, North Carolina Logistics, Inc. requests that the above-entitled action be removed from the First Judicial District Court, County of Santa Fe, State of New Mexico, to this United States District Court for the District of New Mexico.

Respectfully Submitted,

BUTT THORNTON & BAEHR PC

/s/ S. Carolyn Ramos
S. Carolyn Ramos
Brett C. Eaton
Attorneys for Defendant
  North Carolina Logistics, Inc.
P.O. Box 3170
Albuquerque, NM 87190-3170
Telephone: (505) 884-0777
scramos@btblaw.com
bceaton@btblaw.com

I HEREBY CERTIFY that on the 19th day of March, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic filing. A courtesy copy was also mailed via First Class Mail, postage prepaid and addressed as follows:

Randi McGinn, Esq.
Michael E. Sievers, Esq.
MCGINN CARPENTER MONTOYA & LOVE PA
201 Broadway Blvd. SE
Albuquerque, NM 87102-3424
Randi@McGinnLaw.com
Mike@McGinnLaw.com

/s/ S. Carolyn Ramos
S. Carolyn Ramos

FILED IN MY OFFICE
DISTRICT COURT CLERK
2/12/2015 10:37:24 AM
STEPHEN T. PACHECO
Cynthia Romero

| **SUMMONS** | |
|---|---|
| District Court: **FIRST JUDICIAL**<br>Santa Fe, County, New Mexico<br>Court Address:<br>**225 Montezuma Ave  (P.O. Box 2268)**<br>**Santa Fe, NM  87504-2268**<br>Court Telephone No.: 505-455-8250 | Case Number:<br>**D-101-CV-2014-02367**<br><br>Assigned Judge:<br>**David K. Thomson** |
| Plaintiff(s):<br>LEE HUNT, as Personal Representative of the<br>Estate of SEAN BREEDEN, Deceased,<br><br>v.<br><br>Defendant(s):<br>NORTH CAROLINA LOGISTICS, INC., a<br>North Carolina corporation, SANVIL GROUP<br>CORP., a Florida corporation, LEONARDO R.<br>CABRERA-SALGADO, individually, and<br>BENITO A. OLIVA, individually | Defendant:<br>**NORTH CAROLINA LOGISTICS,**<br>**INC.** |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that

1.      A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

2.      You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA)  The Court's address is listed above.

3.      You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6.      If you need an interpreter, you must ask for one in writing.

7.      You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

8.      Along with this Summons and Complaint you are also being served Plaintiffs' First Set of Interrogatories and First Requests for Production, as well as Plaintiffs' First Set of Requests for Admission.  You are required to serve answers and responses to these documents within 45 days of service of this Summons, and file a Certificate of Service attesting to service with the Court.

Dated at Santa Fe, NM this 12th day of February, 2015

Submitted By:



STEPHEN T. PACHECO
CLERK OF THE DISTRICT COURT

BY Court Clerk



McGINN
CARPENTER
MONTOYA
& LOVE

*/s/ Michael E. Sievers*

Micheal E. Sievers
Randi McGinn
201 Broadway Blvd., SE
Albuquerque, NM 87102
p: (505) 843-6161
f: (505) 242-8227
*Attorneys for Plaintiffs*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

2

## RETURN[1]

STATE OF _____ )
                                                  )ss
COUNTY OF _____ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the ____ day of _____, ____, by delivering a copy of this summons, with a copy of complaint along with Plaintiffs' First Set of Interrogatories and First Requests for Production, as well as Plaintiffs' First Set of Requests for Admission, in the following manner:

### (check one box and fill in appropriate blanks)

[ ]    to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

3

[ ]    to _____ (*name of person*), _____,
(*title of person authorized to receive service.  Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____ [2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

## USE NOTE

    1.    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

    2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007;  by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

4

FILED IN MY OFFICE
DISTRICT COURT CLERK
11/3/2014 10:32:07 AM
STEPHEN T. PACHECO
Antonio Hernandez

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

LEE HUNT, as Personal Representative
of the Estate of SEAN BREEDEN, Deceased,

         Plaintiff,

v.                         No. _____

D-101-CV-2014-02367

NORTH CAROLINA LOGISTICS, INC., a
North Carolina corporation,
SANVIL GROUP CORP.,
a Florida corporation,
LEONARDO R. CABRERA-SALGADO,
individually, and BENITO A. OLIVA, individually,

         Defendants.

## COMPLAINT FOR WRONGFUL DEATH

Plaintiff, Lee Hunt, as Personal Representative of the Estate of Sean Breeden, deceased,

through his counsel, McGinn, Carpenter, Montoya & Love, for his Complaint against Defendants

North Carolina Logistics, Inc., Sanvil Group Corp., Leonardo R. Cabrera-Salgado, and Benito A.

Oliva, states:

## PARTIES, JURISDICTION AND VENUE

1.     Sean Breeden was a resident and domiciliary of Rio Rancho, Sandoval County,

New Mexico when he died on March 6, 2014.

2.     Plaintiff Lee Hunt resides in Santa Fe, Santa Fe County, New Mexico and has

been duly appointed Personal Representative of the Wrongful Death Estate of Sean Breeden.

3.     Upon information and belief, Defendant North Carolina Logistics, Inc. ("NC

Logistics") is a North Carolina corporation with its principal place of business in Wallace, North

Carolina.

4.     Upon information and belief, NC Logistics' registered agent for service of process is Anner Rosquete, 634 S. Norwood Street, Wallace, NC 28466.

5.     Upon information and belief, Defendant Sanvil Group Corp. is a Florida for-profit corporation with its principal address in Mint Hill, North Carolina.

6.     Upon information and belief, Sanvil Group Corp.'s registered agent for service of process is F&S Projects Corp., 1920 N. Commerce Parkway, Suite 1920-3, Weston, FL 33326.

7.     Upon information and belief, Defendant Leonardo R. Cabrera-Salgado is a resident of Hialeah, Florida.

8.     Upon information and belief, Defendant Benito A. Oliva is a resident of Hollywood, Florida.

9.     Upon information and belief, at all times pertinent hereto, Defendant Cabrera-Salgado was an agent or employee of Defendant Sanvil Group Corp. and/or Defendant North Carolina Logistics, Inc.

10.     Upon information and belief, at all times pertinent hereto, Defendant Oliva was an agent or employee of Defendant Sanvil Group Corp. and/or Defendant NC Logistics.

11.     Upon information and belief, at all times pertinent hereto, Defendants Cabrera Salgado and Oliva were acting within the scope of their employment with Defendant Sanvil Group Corp. and/or Defendant North Carolina Logistics, Inc.

12.     At all times pertinent hereto, Defendant Sanvil Group Corp. was acting through its employees or agents, who were acting in the course of their employment, and is responsible for their acts and omissions under the doctrines of agency or *respondeat superior*.

13.     At all times pertinent hereto, Defendant NC Logistics was acting through its

employees or agents, who were acting in the course of their employment, and is responsible for

their acts and omissions under the doctrines of agency or *respondeat superior*.

14.     All events alleged in this Complaint occurred in Guadalupe County, New Mexico.

15.     This Court has personal jurisdiction over all the named parties.

16.     This Court has subject matter jurisdiction over this matter.

17.     Venue is proper in this Court.

## FACTUAL BASIS

### Safety rules for truck drivers

18.     Anyone operating a motor vehicle on a public roadway must exercise caution for

the safety of other people using the road and should not stop a vehicle in the middle of an

interstate highway, particularly when it is dark.

19.     A driver has a right to assume that other drivers, including truck drivers, will obey

the law on the roadways.

20.     Pursuant to 49 C.F.R. § 383.110, all drivers of Commercial Motor Vehicles

(CMVs) must have the knowledge and skills necessary to safely operate a CMV, including

general knowledge pursuant to 49 C.F.R. § 111  regarding:

> a.     Proper use of the CMV's safety systems and the procedures needed to use
>        those safety systems;
>
> b.  Proper procedures for performing various basic maneuvers;
>
> c.  Proper communications, including communicating presence; and
>
> d.  When and how to make emergency maneuvers, including emergency stops.

21.     To protect the safety of other motorists, a CLP driver must be accompanied by the holder of a CDL, who must be physically present in the front seat of the vehicle next to the driver at all times while the CMV is being operated, so that the holder of the CDL may observe and directly supervise the trainee, pursuant to 49 C.F.R. § 383.25(a)(1).

22.     The driver of a CMV is prohibited from operating the vehicle in a condition as likely to cause an accident or a breakdown of the vehicle, pursuant to 49 C.F.R. § 396.7.

23.     The driver of a CMV is required to ensure that emergency equipment is in place and ready for use if the CMV becomes inoperable or otherwise becomes a hazard, pursuant to 49 C.F.R. § 392.8, such equipment to include three bidirectional emergency reflective triangles and at least six fusees or three liquid-burning flares, pursuant to 49 C.F.R. § 393.55(f).

24.     A driver whose vehicle becomes inoperable must take reasonable steps to move the vehicle to the shoulder of the road to prevent the vehicle from becoming a hazard to other drivers on the road.

25.     When a CMV stops on the shoulder or on the roadway, the driver must immediately activate hazard warning signal flashers to warn other drivers that the truck presents a hazard, pursuant to 49 C.F.R. § 392.22(a).

26.     After activating the flashers, the driver of a CMV stopped on a divided highway is required to place emergency reflective triangles and fusees or liquid-burning flares in the road, at a distance of 10 feet, 100 feet, and 200 feet from the vehicle, to alert other drivers to the presence of the hazard, pursuant to 49 C.F.R. § 392.22(b)(2)(v).

27.     The driver of a CMV is required to ensure that the vehicle's hazard warning signal flasher lamps are capable of being operated at all times, pursuant to 49 C.F.R. § 393.9; *see* 49 C.F.R. § 393.19.

28.     Under New Mexico law, a person must not drive a motor vehicle unless the
person is qualified, by experience, training or both, to safely operate the type of motor vehicle
being driven and has been issued a currently valid motor vehicle operator's license or permit of
the proper class for the vehicle that the person is driving.

29.     Under New Mexico law, a driver is prohibited from driving a motor vehicle if the
driver has not ensured that all safety-related parts and accessories are in good working order.

**Safety rules for trucking companies**

30.     Trucking companies that make money by contracting to haul loads on highways
and roadways must ensure that their drivers are safe drivers.

31.     Under New Mexico law, a trucking company must not require or permit a person
to drive a motor vehicle unless the person is qualified, by experience, training or both, to safely
operate the type of motor vehicle being driven and has been issued a currently valid motor
vehicle operator's license or permit of the proper class for the vehicle that the person is driving.

32.     Trucking companies must have appropriate policies, procedures and training in
place to ensure they do not needlessly endanger the public while hauling loads on highways and
roadways.

33.     Trucking companies must have appropriate policies, procedures and training in
place to ensure that their drivers have the necessary knowledge and skills to safely operate a
CMV.

34.     Trucking companies must have appropriate policies, procedures and training in
place to ensure that their drivers are capable of following the safety rules for truck drivers, listed
above, including the safety rules requiring drivers to activate flashers and place warning devices
on the road in the event of a breakdown.

35.     Trucking companies must have appropriate policies, procedures and training in place to ensure that a driver in training who does not have a Commercial Driver's License (CDL) is accompanied at all times by the holder of a CDL who is physically present in the front seat next to the driver in training.

36.     Under New Mexico law, trucking companies must not permit a person to drive a vehicle if the driver has not ensured that all safety-related parts and accessories are in good working order.

**Defendants' violation of safety rules resulting in Sean Breeden's death**

37.     On the early morning of March 6, 2014, Defendants Cabrera-Salgado and Oliva were traveling westbound on Interstate 40, a divided highway, through Guadalupe County, New Mexico in a 2007 freightliner owned by Sanvil Group Corp. and/or NC Logistics.

38.     The truck Defendants were operating was a Commercial Motor Vehicle (CMV) as defined by federal and state law, 49 C.F.R. § 383.5 and NMSA 1978, § 66-1-4.3(J) (2009).

39.     Upon information and belief, Cabrera-Salgado was in training and had approximately 30 days of experience driving CMVs.

40.     Upon information and belief, Oliva was asleep in the sleeper cab as Cabrera-Salgado drove through Guadalupe County on I-40.

41.     When the driver, Defendant Cabrera-Salgado, experienced mechanical problems with the engine of the freightliner, he did not pull it off the interstate highway onto the shoulder, but allowed it to grind to halt in the right-hand westbound lane of the interstate.

42.     Cabrera-Salgado had sufficient time to move the truck onto the shoulder as it was slowing down and the shoulder was wide enough to safely accommodate the truck.

43.     The location where Cabrera-Salgado stopped the truck in the traveling lane of an active interstate was extremely dark, with no ambient lighting from street lights, highway lights, or lights from businesses, houses, or other structures.

44.     Neither Cabrera-Salgado nor Oliva activated the hazard warning signal flashers.

45.     Neither Cabrera-Salgado nor Oliva deployed any warning devices in the roadway, such as triangles, cones, or flares.

46.     Upon information and belief, the CMV did not activate any parking lights, brake lights or hazard flashers as it sat in the travel lane on a busy interstate.

47.     On the same morning, Sean Breeden was driving from North Carolina to his home in Rio Rancho, New Mexico, in his 2013 Ford Taurus, also traveling westbound on Interstate 40 through Guadalupe County.

48.     At approximately 4 a.m., Mr. Breeden's car approached the improperly parked truck being operated by Defendants Oliva and Cabrera-Salgado, traveling at approximately 70 mph in the right-hand westbound travel lane.

49.     The speed limit on the section of road where the semi was parked is 75 mph, and the investigating officer found that 75 mph was a safe speed to be driving under the conditions.

50.     Unbeknownst to Mr. Breeden, the lane was blocked by Defendants' truck.

51.     Mr. Breeden could not have seen the truck because Defendants had chosen not to deploy any emergency safety devices or flashers.

52.     Mr. Breeden's car struck the back of Defendant's trailer with such force that the top of the car was nearly sheared off.

53.     The impact caused the car to slide into the left lane, with the front of the car still trapped underneath the trailer.

54.     The car came to a stop with the front trapped underneath the trailer and the back

of the car in the left-hand westbound travel lane so that the car was perpendicular with the travel

lane, with the passenger side of the car facing oncoming traffic in the left lane.

55.     After the initial shattering collision, a van being driven by Dianna Miller, also

traveling westbound, approached the crash site.

56.     As Mr. Breeden had experienced, Ms. Miller could not recognize and avoid the

unlighted, unmarked truck in the middle of the interstate or the Ford Taurus that was now

sideways across her lane of travel.

57.     Ms. Miller's van slammed into the passenger side of Mr. Breeden's car.

58.     Mr. Breeden was wearing his seatbelt, but did not survive the crashes.

59.     Deputy medical investigator Chris Griego pronounced Mr. Breeden dead at 5:33

a.m. on March 6, 2014.

60.     Cabrera-Salgado falsely told New Mexico State Police Sgt. Wheeler that the

flashers did not work because the truck did not have power, but Sgt. Wheeler discovered that the

flashers were working properly at the scene.

61.     Cabrera-Salgado was cited for illegally stopping in the roadway.

## COUNT I
## NEGLIGENCE PER SE BY OPERATOR DEFENDANTS

All previous paragraphs are incorporated herein by reference.

62.     At the time of the crash, Defendants Oliva and Cabrera-Salgado intentionally,

willfully, recklessly or negligently operated the truck in violation of one or more of the following

state and federal regulations, including the following:

    a.  NMSA 1978, 65-3-7 (2009); 65-3-8 (1989) and 66-7-349 (1999);

    b.  NMAC §§ 18.2.3.12; 18.2.3.13; 18.2.3.15; and 18.3.4.11; and

    c.   49 C.F.R. §§ 111; 383.25(a)(1); 383.110; 392.8; 392.22(a); 392.22(b)(2)(v); 393.9; 393.55(f); and 396.7.

63.    Mr. Breeden was in the class of persons sought to be protected by the laws and statutes governing the safe operation of motor vehicles on public roadways.

64.    Mr. Breeden's death was of the type of injury the New Mexico Legislature and the federal government sought to prevent through statutes governing the operation of motor vehicles.

65.    The acts of these Defendants constitute negligence *per se*.

66.    As a direct and proximate result of Defendants' negligence *per se*, Sean Breeden was killed, resulting in funeral expenses, medical expenses, lost earnings, lost household services, property damage, lost value of life, and pain and suffering. Mr. Breeden's wrongful death was accompanied by aggravating circumstances.

67.    The intentional, willful, reckless violation of rules and standards by the Defendants, and the fraudulent misrepresentation at the scene, merits an award of punitive damages.

## COUNT II
## COMMON LAW NEGLIGENCE BY OPERATOR DEFENDANTS

All previous paragraphs are incorporated herein by reference.

68.    A driver must exercise ordinary care to protect the safety of other drivers on the road.

69.    Defendants Cabrera-Salgado and Olivas intentionally, willfully, recklessly or negligently breached their duty of care by one or more of the following acts or omissions:

    a.   Choosing not to comply with the requirement that the CDL holder be physically present next to the driver-in-training at all times;

b. Choosing to keep traveling with the driver-in-training operating the truck when the CDL holder was tired or fatigued enough to sleep in the sleeper berth;

c. Operating and stopping the truck in an unsafe manner;

d. Failing to keep the vehicle under control;

e. Disregarding the safety of other motorists;

f. Failing to move the truck to the shoulder upon experiencing mechanical problems;

g. Stopping in the travel lane of an active interstate in the dark;

h. Failing to use hazard flashers; and

i. Failing to use required warning devices such as cones, triangles, or flares to alert other drivers to the hazard presented by the stopped truck.

70. As a result of Defendants' decisions to drive unsafely and not to take the proper safety precautions once the truck came to a stop, an unsuspecting driver, Mr. Breeden, hit the unmarked, unlighted truck, resulting in his death.

71. As a direct and proximate result of Defendants negligent, reckless and/or willful conduct, Mr. Breeden was killed and suffered those damages set out in paragraph 66 and 67.

## COUNT III
## NEGLIGENCE, NEGLIGENT ENTRUSTMENT AND LEASE LIABILITY BY DEFENDANTS NC LOGISTICS AND SANVIL GROUP CORP.

All paragraphs are incorporated herein by reference.

72. At all times pertinent hereto, Defendant NC Logistics, and/or Sanvil Group Corp. had exclusive possession, control and use of the truck and trailer and the ability to decide who could operate that CMV.

73. The corporate Defendants hired Defendants Cabrera-Salgado and Oliva to operate the truck that caused the crash that killed Sean Breeden.

74. The corporate Defendants knew or should have known that the Operator Defendants were likely to use the vehicle in such a manner as to create an unreasonable risk of harm to others.

75. Upon information and belief, the corporate Defendants did not have adequate policies, procedures in place to ensure that those drivers entrusted with their vehicles did not pose a danger to the traveling public.

76. Upon information and belief, Defendant NC Logistics, or alternatively, Sanvil Group Corp., hired the Operator Defendants and owned or leased the truck they were driving to transport goods.

77. At the time of the collision, while performing the task assigned to them by the corporate Defendants, the Operator Defendants were driving a truck under the exclusive possession, control, and use of Defendant NC Logistics, or alternatively, Defendant Sanvil Group Corp.

78. As a direct and proximate result of the corporate Defendants' negligent, reckless or willful conduct, Plaintiff suffered foreseeable injury.

79. As the owners of the truck and trailer and the employers of and/or lessee of the Operator Defendants, along with negligently, willfully or recklessly entrusting the Operator Defendants with a motor vehicle, the Corporate Defendants are liable for the wrongful death of Sean Breeden and the damages set out in paragraph 66.

80. Plaintiff is entitled to punitive damages against the Corporate Defendants because:

> a. Their own direct acts and omissions were done intentionally, willfully or recklessly;

b. They authorized, participated in or ratified the bad conduct of the Operator Defendants;

c. The Operator Defendants were acting in the scope of their employment or agency with the Corporate Defendants and had sufficient discretionary authority to speak or act on their behalf; or

d. The conduct of the Operator Defendants and other agents or employees of the Corporate Defendants, when taken as a whole, showed that the Corporate Defendants acted willfully, recklessly or wantonly.

## COUNT IV
## RESPONDEAT SUPERIOR LIABILITY AND LIABILITY FOR NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION BY DEFENDANTS SANVIL GROUP CORP. AND NC LOGISTICS.

All paragraphs are incorporated herein by reference.

81. The Corporate Defendants, through their employees and agents, hired the Operator Defendants, who were the employees or agents of the Corporate Defendants at the time of the crash.

82. The Corporate Defendants, as the employers or principals of the truck drivers, had a duty to exercise ordinary care in hiring drivers who were adequately trained, experienced and were safe drivers.

83. The Corporate Defendants, as employers or principals of the truck drivers, had a duty to use ordinary care in its manner of training, supervising and retaining drivers.

84. Upon information and belief, the Corporate Defendants willfully, recklessly or negligently breached their duty to use ordinary care in the hiring, training, supervising and retaining of the Operator Defendants.

85. As a direct and proximate cause of the intentional, willful, reckless or negligent acts and omissions of the Corporate Defendants, they are liable for the wrongful death of Sean

Breeden and the damages set out in paragraph 66 and are liable for punitive damages as set out in paragraph 80.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Lee Hunt requests that a judgment be entered in his favor against Defendants for compensatory damages for wrongful death in an amount to be proven at trial, including aggravating damages; punitive damages, costs, pre-judgment and post-judgment interest, attorneys' fees, expenses and costs of suit, and such other relief as the Court deems just and proper.

Respectfully submitted,

 McGINN
CARPENTER
MONTOYA
& LOVE

*/s/ Michael E. Sievers*
Randi McGinn
Michael E. Sievers
201 Broadway Blvd. SE
Albuquerque, New Mexico 87102
p: (505) 843-6161
f: (505) 242-8227
e: Mike@McGinnLaw.com

*Attorneys for Plaintiff*