IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**LEE HUNT, as personal representative
Of the Estate of SEAN BREEDEN, Deceased,**

    **Plaintiff,**

v.                                                                          1:15-cv-00233-JB-LAM

**NORTH CAROLINA LOGISTICS, INC., a
North Carolina corporation,
SANVIL GROUP CORP.,
a Florida corporation,
LEONARDO R. CABRERA-SALGADO,
individually, and BENITO A. OLIVA, individually,
TRANS DELBUC, LLC, a Florida limited liability company,
and ANTONIO DELLI COLLI,**

    **Defendants.**

### FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH

Plaintiff, Lee Hunt, as Personal Representative of the Estate of Sean Breeden, deceased, through his counsel, McGinn, Carpenter, Montoya & Love, for his Complaint against Defendants North Carolina Logistics, Inc., Sanvil Group Corp., Leonardo R. Cabrera-Salgado, and Benito A. Oliva, Trans Delbuc, LLC, and Antonio Delli Colli, states:

### PARTIES, JURISDICTION AND VENUE

1.  Sean Breeden was a resident and domiciliary of Rio Rancho, Sandoval County, New Mexico when he died on March 6, 2014.

2.  Plaintiff Lee Hunt resides in Santa Fe, Santa Fe County, New Mexico and has been duly appointed Personal Representative of the Wrongful Death Estate of Sean Breeden.

3. Upon information and belief, Defendant North Carolina Logistics, Inc. ("NC Logistics") is a North Carolina corporation with its principal place of business in Wallace, North Carolina.

4. Upon information and belief, NC Logistics' registered agent for service of process is Anner Rosquete, 634 S. Norwood Street, Wallace, NC 28466.

5. Upon information and belief, Defendant Sanvil Group Corp. is a Florida for-profit corporation with its principal address in Mint Hill, North Carolina.

6. Upon information and belief, Sanvil Group Corp.'s registered agent for service of process is F&S Projects Corp., 1920 N. Commerce Parkway, Suite 1920-3, Weston, FL 33326.

7. Upon information and belief, Defendant Leonardo R. Cabrera-Salgado is a resident of Hialeah, Florida.

8. Upon information and belief, Defendant Benito A. Oliva is a resident of Hollywood, Florida.

9. Upon information and belief, at all times pertinent hereto, Defendant Cabrera-Salgado was an agent or employee of Defendant Sanvil Group Corp. and/or Defendant North Carolina Logistics, Inc.

10. Upon information and belief, at all times pertinent hereto, Defendant Oliva was an agent or employee of Defendant Sanvil Group Corp. and/or Defendant NC Logistics.

11. Upon information and belief, at all times pertinent hereto, Defendants Cabrera Salgado and Oliva were acting within the scope of their employment with Defendant Sanvil Group Corp. and/or Defendant North Carolina Logistics, Inc.

12. At all times pertinent hereto, Defendant Sanvil Group Corp. was acting through its employees or agents, who were acting in the course of their employment, and is responsible for their acts and omissions under the doctrines of agency or *respondeat superior*.

13. At all times pertinent hereto, Defendant NC Logistics was acting through its employees or agents, who were acting in the course of their employment, and is responsible for their acts and omissions under the doctrines of agency or *respondeat superior*.

14. Upon information and belief, Defendant Trans Delbuc, LLC is a Florida for-profit limited liability company with its principal address in Doral, Florida, and is owned, managed, and/or operated by Defendant Antonio Delli Colli, presumably a resident of Florida. Alternatively, Mr. Delli Colli owned the semi-truck that broke down and was involved in this collision.

15. Upon information and belief, Defendant Trans Delbuc's registered agent for service of process is CMS International Enterprises, Inc., 550 Biltmore Way Ste 200, Coral Gables, FL 33134.

16. At all times pertinent hereto, Defendant Trans Delbuc was acting through its employees or agents, who were acting in the course of their employment, and is responsible for their acts and omissions under the doctrines of agency or *respondeat superior*.

17. All events alleged in this Complaint occurred in Guadalupe County, New Mexico.

18. This Court has personal jurisdiction over all the named parties.

19. This Court has subject matter jurisdiction over this matter.

20. Venue is proper in this Court.

## FACTUAL BASIS

**Safety rules for truck drivers**

21. Anyone operating a motor vehicle on a public roadway must exercise caution for the safety of other people using the road and should not stop a vehicle in the middle of an interstate highway, particularly when it is dark.

22. A driver has a right to assume that other drivers, including truck drivers, will obey the law on the roadways.

23. Pursuant to 49 C.F.R. § 383.110, all drivers of Commercial Motor Vehicles (CMVs) must have the knowledge and skills necessary to safely operate a CMV, including general knowledge pursuant to 49 C.F.R. § 111 regarding:

   a. Proper use of the CMV's safety systems and the procedures needed to use those safety systems;

   b. Proper procedures for performing various basic maneuvers;

   c. Proper communications, including communicating presence; and

   d. When and how to make emergency maneuvers, including emergency stops.

24. To protect the safety of other motorists, a CLP driver must be accompanied by the holder of a CDL, who must be physically present in the front seat of the vehicle next to the driver at all times while the CMV is being operated, so that the holder of the CDL may observe and directly supervise the trainee, pursuant to 49 C.F.R. § 383.25(a)(1).

25. The driver of a CMV is prohibited from operating the vehicle in a condition as likely to cause an accident or a breakdown of the vehicle, pursuant to 49 C.F.R. § 396.7.

26. The driver of a CMV is required to ensure that emergency equipment is in place and ready for use if the CMV becomes inoperable or otherwise becomes a hazard, pursuant to 49

4

C.F.R. § 392.8, such equipment to include three bidirectional emergency reflective triangles and at least six fusees or three liquid-burning flares, pursuant to 49 C.F.R. § 393.55(f).

27. A driver whose vehicle becomes inoperable must take reasonable steps to move the vehicle to the shoulder of the road to prevent the vehicle from becoming a hazard to other drivers on the road.

28. When a CMV stops on the shoulder or on the roadway, the driver must immediately activate hazard warning signal flashers to warn other drivers that the truck presents a hazard, pursuant to 49 C.F.R. § 392.22(a).

29. After activating the flashers, the driver of a CMV stopped on a divided highway is required to place emergency reflective triangles and fusees or liquid-burning flares in the road, at a distance of 10 feet, 100 feet, and 200 feet from the vehicle, to alert other drivers to the presence of the hazard, pursuant to 49 C.F.R. § 392.22(b)(2)(v).

30. The driver of a CMV is required to ensure that the vehicle's hazard warning signal flasher lamps are capable of being operated at all times, pursuant to 49 C.F.R. § 393.9; *see* 49 C.F.R. § 393.19.

31. Under New Mexico law, a person must not drive a motor vehicle unless the person is qualified, by experience, training or both, to safely operate the type of motor vehicle being driven and has been issued a currently valid motor vehicle operator's license or permit of the proper class for the vehicle that the person is driving.

32. Under New Mexico law, a driver is prohibited from driving a motor vehicle if the driver has not ensured that all safety-related parts and accessories are in good working order.

**Safety rules for trucking companies**

33.     Trucking companies that make money by contracting to haul loads on highways and roadways must ensure that their drivers are safe drivers.

34.     Under New Mexico law, a trucking company must not require or permit a person to drive a motor vehicle unless the person is qualified, by experience, training or both, to safely operate the type of motor vehicle being driven and has been issued a currently valid motor vehicle operator's license or permit of the proper class for the vehicle that the person is driving.

35.     Trucking companies must have appropriate policies, procedures and training in place to ensure they do not needlessly endanger the public while hauling loads on highways and roadways.

36.     Trucking companies and equipment owners and providers must ensure that their trucks and trailers are in proper working condition before using them to transport goods on public highways.

37.     Trucking companies must have appropriate policies, procedures and training in place to ensure that their drivers have the necessary knowledge and skills to safely operate a CMV.

38.     Trucking companies must have appropriate policies, procedures and training in place to ensure that their drivers are capable of following the safety rules for truck drivers, listed above, including the safety rules requiring drivers to activate flashers and place warning devices on the road in the event of a breakdown.

39.     Trucking companies must have appropriate policies, procedures and training in place to ensure that a driver in training who does not have a Commercial Driver's License (CDL)

is accompanied at all times by the holder of a CDL who is physically present in the front seat next to the driver in training.

40. Under New Mexico law, trucking companies must not permit a person to drive a vehicle if the driver has not ensured that all safety-related parts and accessories are in good working order.

**Defendants' violation of safety rules resulting in Sean Breeden's death**

41. On the early morning of March 6, 2014, Defendants Cabrera-Salgado and Oliva were traveling westbound on Interstate 40, a divided highway, through Guadalupe County, New Mexico in a 2007 freightliner owned by Sanvil Group Corp. and/or NC Logistics.

42. The truck Defendants were operating was a Commercial Motor Vehicle (CMV) as defined by federal and state law, 49 C.F.R. § 383.5 and NMSA 1978, § 66-1-4.3(J) (2009).

43. Upon information and belief, Cabrera-Salgado was in training and had approximately 30 days of experience driving CMVs.

44. Upon information and belief, Oliva was asleep in the sleeper cab as Cabrera-Salgado drove through Guadalupe County on I-40.

45. When the driver, Defendant Cabrera-Salgado, experienced mechanical problems with the engine of the freightliner, he did not pull it off the interstate highway onto the shoulder, but allowed it to grind to halt in the right-hand westbound lane of the interstate.

46. Cabrera-Salgado had sufficient time to move the truck onto the shoulder as it was slowing down and the shoulder was wide enough to safely accommodate the truck.

47. The location where Cabrera-Salgado stopped the truck in the traveling lane of an active interstate was extremely dark, with no ambient lighting from street lights, highway lights, or lights from businesses, houses, or other structures.

48. Neither Cabrera-Salgado nor Oliva activated the hazard warning signal flashers.

49. Neither Cabrera-Salgado nor Oliva deployed any warning devices in the roadway, such as triangles, cones, or flares.

50. Upon information and belief, the CMV did not activate any parking lights, brake lights or hazard flashers as it sat in the travel lane on a busy interstate.

51. On the same morning, Sean Breeden was driving from North Carolina to his home in Rio Rancho, New Mexico, in his 2013 Ford Taurus, also traveling westbound on Interstate 40 through Guadalupe County.

52. At approximately 4 a.m., Mr. Breeden's car approached the improperly parked truck being operated by Defendants Oliva and Cabrera-Salgado, traveling at approximately 70 mph in the right-hand westbound travel lane.

53. The speed limit on the section of road where the semi was parked is 75 mph, and the investigating officer found that 75 mph was a safe speed to be driving under the conditions.

54. Unbeknownst to Mr. Breeden, the lane was blocked by Defendants' truck.

55. Mr. Breeden could not have seen the truck because Defendants had chosen not to deploy any emergency safety devices or flashers.

56. Mr. Breeden's car struck the back of Defendant's trailer with such force that the top of the car was nearly sheared off.

57. The impact caused the car to slide into the left lane, with the front of the car still trapped underneath the trailer.

58. The car came to a stop with the front trapped underneath the trailer and the back of the car in the left-hand westbound travel lane so that the car was perpendicular with the travel lane, with the passenger side of the car facing oncoming traffic in the left lane.

59. After the initial shattering collision, a van being driven by Dianna Miller, also traveling westbound, approached the crash site.

60. As Mr. Breeden had experienced, Ms. Miller could not recognize and avoid the unlighted, unmarked truck in the middle of the interstate or the Ford Taurus that was now sideways across her lane of travel.

61. Ms. Miller's van slammed into the passenger side of Mr. Breeden's car.

62. Mr. Breeden was wearing his seatbelt, but did not survive the crashes.

63. Deputy medical investigator Chris Griego pronounced Mr. Breeden dead at 5:33 a.m. on March 6, 2014.

64. Cabrera-Salgado falsely told New Mexico State Police Sgt. Wheeler that the flashers did not work because the truck did not have power, but Sgt. Wheeler discovered that the flashers were working properly at the scene.

65. Cabrera-Salgado was cited for illegally stopping in the roadway.

## COUNT I
## NEGLIGENCE PER SE BY OPERATOR DEFENDANTS

All previous paragraphs are incorporated herein by reference.

66. At the time of the crash, Defendants Oliva and Cabrera-Salgado intentionally, willfully, recklessly or negligently operated the truck in violation of one or more of the following state and federal regulations, including the following:

   a. NMSA 1978, 65-3-7 (2009); 65-3-8 (1989) and 66-7-349 (1999);

   b. NMAC §§ 18.2.3.12; 18.2.3.13; 18.2.3.15; and 18.3.4.11; and

   c. 49 C.F.R. §§ 111; 383.25(a)(1); 383.110; 392.8; 392.22(a); 392.22(b)(2)(v); 393.9; 393.55(f); and 396.7.

67. Mr. Breeden was in the class of persons sought to be protected by the laws and statutes governing the safe operation of motor vehicles on public roadways.

68. Mr. Breeden's death was of the type of injury the New Mexico Legislature and the federal government sought to prevent through statutes governing the operation of motor vehicles.

69. The acts of these Defendants constitute negligence *per se.*

70. As a direct and proximate result of Defendants' negligence *per se*, Sean Breeden was killed, resulting in funeral expenses, medical expenses, lost earnings, lost household services, property damage, lost value of life, and pain and suffering. Mr. Breeden's wrongful death was accompanied by aggravating circumstances.

71. The intentional, willful, reckless violation of rules and standards by the Defendants, and the fraudulent misrepresentation at the scene, merits an award of punitive damages.

## COUNT II
## COMMON LAW NEGLIGENCE BY OPERATOR DEFENDANTS

All previous paragraphs are incorporated herein by reference.

72. A driver must exercise ordinary care to protect the safety of other drivers on the road.

73. Defendants Cabrera-Salgado and Olivas intentionally, willfully, recklessly or negligently breached their duty of care by one or more of the following acts or omissions:

    a. Choosing not to comply with the requirement that the CDL holder be physically present next to the driver-in-training at all times;

    b. Choosing to keep traveling with the driver-in-training operating the truck when the CDL holder was tired or fatigued enough to sleep in the sleeper berth;

    c. Operating and stopping the truck in an unsafe manner;

  d. Failing to keep the vehicle under control;

  e. Disregarding the safety of other motorists;

  f. Failing to move the truck to the shoulder upon experiencing mechanical problems;

  g. Stopping in the travel lane of an active interstate in the dark;

  h. Failing to use hazard flashers; and

  i. Failing to use required warning devices such as cones, triangles, or flares to alert other drivers to the hazard presented by the stopped truck.

74. As a result of Defendants' decisions to drive unsafely and not to take the proper safety precautions once the truck came to a stop, an unsuspecting driver, Mr. Breeden, hit the unmarked, unlighted truck, resulting in his death.

75. As a direct and proximate result of Defendants negligent, reckless and/or willful conduct, Mr. Breeden was killed and suffered those damages set out in paragraph 66 and 67.

## COUNT III
## NEGLIGENCE, NEGLIGENT ENTRUSTMENT AND LEASE LIABILITY BY DEFENDANTS NC LOGISTICS, SANVIL GROUP CORP., TRANS DELBUC, AND ANTONIO DELLI COLLI

All paragraphs are incorporated herein by reference.

76. At all times pertinent hereto, Defendants NC Logistics, Trans Delbuc, Antonio Delli Colli and/or Sanvil Group Corp. had exclusive possession, control and use of the truck and trailer and the ability to decide who could operate that CMV.

77. Sanvil, Trans Delbuc, and/or Antonio Delli Colli supplied the truck to NC Logistics for the trip.  The truck was owned by Trans Delbuc or Antonio Delli Colli and registered by Sanvil.

78. Upon information and belief, Sanvil, Trans Delbuc, or Antonio Delli Colli supplied the trailer to NC Logistics for the trip.

79. Trans Delbuc or Antonio Delli Colli were responsible for maintenance of the truck as the owner of the truck, while Sanvil was also responsible for maintenance of the truck and trailer as an intermodal equipment provider under federal regulations.

80. Trans Delbuc, Antonio Delli Colli, or Sanvil intentionally, willfully, recklessly or negligently put a semi-truck on the road with known mechanical problems, which was likely to break down and endanger the traveling public.

81. North Carolina Logistics hired Defendants Cabrera-Salgado and Oliva to operate the truck that caused the crash that killed Sean Breeden.

82. The corporate Defendants knew or should have known that the Operator Defendants were likely to use the vehicle in such a manner as to create an unreasonable risk of harm to others.

83. Sanvil, Antonio Delli Colli, and/or Trans Delbuc should have known that North Carolina Logistics had a poor safety record and was likely to use the truck and/or trailer in such a manner as to create an unreasonable risk of harm to others.

84. Upon information and belief, the corporate Defendants did not have adequate policies, procedures in place to ensure that those drivers entrusted with their vehicles did not pose a danger to the traveling public.

85. Upon information and belief, Defendant NC Logistics hired the Operator Defendants and leased the truck and trailer they were driving to transport goods from Sanvil, Antonio Delli Colli, and/or Trans Delbuc.

86. At the time of the collision, while performing the task assigned to them by the corporate Defendants, the Operator Defendants were driving a truck under the exclusive

possession, control, and use of Defendant NC Logistics, or alternatively, Defendant Sanvil Group Corp., Antonio Delli Colli, or Trans Delbuc.

87. As a direct and proximate result of the corporate Defendants' negligent, reckless or willful conduct, Plaintiff suffered foreseeable injury.

88. As the owners of the truck and trailer and the employers of and/or lessee of the Operator Defendants, along with negligently, willfully or recklessly entrusting the Operator Defendants with a motor vehicle, the Corporate Defendants are liable for the wrongful death of Sean Breeden and the damages set out in paragraph 66.

89. Plaintiff is entitled to punitive damages against these Defendants because:

   a. Their own direct acts and omissions were done intentionally, willfully or recklessly;

   b. They authorized, participated in or ratified the bad conduct of the Operator Defendants;

   c. The Operator Defendants were acting in the scope of their employment or agency with the Corporate Defendants and had sufficient discretionary authority to speak or act on their behalf; or

   d. The conduct of the Operator Defendants and other agents or employees of the Corporate Defendants, when taken as a whole, showed that the Corporate Defendants acted willfully, recklessly or wantonly.

## COUNT IV
## RESPONDEAT SUPERIOR LIABILITY AND LIABILITY FOR NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION BY DEFENDANT NC LOGISTICS

All paragraphs are incorporated herein by reference.

90. NC Logistics, through its employees and agents, hired the Operator Defendants, who were the employees or agents of NC Logistics at the time of the crash.

91.     NC Logistics, as the employer or principal of the truck drivers, had a duty to exercise ordinary care in hiring drivers who were adequately trained, experienced and were safe drivers.

92.     NC Logistics, as employer or principal of the truck drivers, had a duty to use ordinary care in its manner of training, supervising and retaining drivers.

93.     Upon information and belief, NC Logistics, willfully, recklessly or negligently breached its duty to use ordinary care in the hiring, training, supervising and retaining of the Operator Defendants.

94.     As a direct and proximate cause of the intentional, willful, reckless or negligent acts and omissions of NC Logistics, it is liable for the wrongful death of Sean Breeden and the damages set out in paragraph 66 and liable for punitive damages as set out in paragraph 80.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Lee Hunt requests that a judgment be entered in his favor against Defendants for compensatory damages for wrongful death in an amount to be proven at trial, including aggravating circumstances; punitive damages, costs, pre-judgment and post-judgment interest, attorneys' fees, expenses and costs of suit, and such other relief as the Court deems just and proper.

Respectfully submitted,



*/s/ Michael E. Sievers*_____
Randi McGinn
Michael E. Sievers
201 Broadway Blvd. SE
Albuquerque, New Mexico 87102

                            p: (505) 843-6161
                            f: (505) 242-8227
                            e: Mike@McGinnLaw.com

- and -

Richard L. Anderson
Price, Smith, Hargett Petho & Anderson
1430 Elizabeth Avenue
Charlotte, NC 28204
p: (704) 372-2160
f:  (704) 372-6516
e:   rlanderson@carolina.rr.com

## CERTIFICATE OF SERVICE

      I hereby certify that on January 8, 2015, I filed the foregoing document electronically through the US District Court CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic filing:

Lawrence H. Hill (hillm@civerolo.com)
Megan Day Hill (hill@civerolo.com)
P.O. Drawer 887
Albuquerque, NM 87103
*Attorneys for Defendant Benito Oliva*

Cord D. Borner, Esq.
(cborner@atwoodmalone.com)
Atwood, Malone, Turner & Sabin
400 N. Pennsylvania Ave., Suite 1100
Roswell, NM 88202
*Attorneys for Defendant Leonardo Cabrera-Salgado*

S. Carolyn Ramos (scramos@btblaw.com)
Brett C. Eaton (bceaton@btblaw.com)
Butt, Thornton & Baehr, PC
4101 Indian School Blvd., NE, Suite 300
Albuquerque, NM 87110
*Attorneys for Defendant North Carolina Logistics, Inc.*

Tim L. Fields, Esq. (tfields@modrall.com)
Susan Miller Bisong, Esq. (sxb@modrall.com)
Alan M. De Young, Esq. (amd@modrall.com)
Modrall, Sperling, Roehl, Harris & Sisk
P.O. Box 2168
Albuquerque, NM 87103
*Attorneys for Defendant Sanvil Group Corp.*

Cody R Rogers
Miller Stratvert
3800 E. Lohman Ave., Ste. H
Las Cruces, NM 88011
crogers@mstlaw.com
*Attorney for proposed Plaintiff-in-Intervention Atlantic Specialty Insurance Company*

**/s/ Michael E. Sievers_____**
**Michael E. Sievers**